IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 16-40-GF-BMM |
| Plaintiff/Respondent, | CV 20-04-GF-BMM |
| vs. | ORDER DENYING § 2255 MOTION |
| RONALD RAY HORNER, | AND DENYING CERTIFICATE OF APPEALABILITY |
| Defendant/Movant. | |

This case comes before the Court on Defendant/Movant Ronald Ray
Horner's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C.
§ 2255.  Horner is a federal prisoner proceeding pro se.

**Preliminary Review**

Before the United States is required to respond, the Court must determine
whether "the motion and the files and records of the case conclusively show that
the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules
Governing Section 2255 Proceedings for the United States District Courts.  A
petitioner "who is able to state facts showing a real possibility of constitutional
error should survive Rule 4 review."  *Calderon v. United States Dist. Court*, 98
F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring)
(referring to Rules Governing § 2254 Cases). The Court should "eliminate the

1

burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## Background

On May 4, 2016, a grand jury indicted Horner on one count of transporting child pornography in violation of 18 U.S.C. § 2252(a)(1). (Doc. 1 at 1-2.) Conviction carried a five-year mandatory minimum sentence. *See* 18 U.S.C. § 2252(b)(1). Assistant Federal Defender Hank Branom was appointed to represent him. (Doc. 10.)

Jury trial commenced on April 5, 2018. (Doc. 51.) After hearing from seven witnesses, the jury received the case at 3:09 p.m. on April 6, 2018, and arrived at a verdict at 3:50 p.m. (Doc. 107 at 174:9, 175:16-18.) The jury found Horner guilty. (Doc. 58.)

Before sentencing, the Court granted counsel's motion to withdraw due to Horner's dissatisfaction and appointed Jason Holden. (Doc. 81.) Horner faced an advisory guideline range of 168 to 210 months. The Court varied downward to a sentence of 154 months in prison to fulfill the sentencing objectives of 18 U.S.C. § 3553(a), followed by a seven-year term of supervised release. (Doc. 91; Doc. 94 at 2-3.)

2

Horner appealed the denial of his motion for mistrial. The Ninth Circuit affirmed Horner's conviction on December 10, 2018. (Doc. 116, *United States v. Horner*, No. 17-30240 (9th Cir. Dec. 10, 2018)).  The United States Supreme Court denied Horner's petition for writ of certiorari on June 3, 2019. (Doc. 122.) Horner's conviction became final on June 3, 2019.  *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012).  He timely filed his § 2255 motion on January 14, 2020.  *See* 28 U.S.C. § 2255(f)(1); *Houston v. Lack*, 487 U.S. 266, 276 (1988).

## Claims and Analysis

The Court organizes Horner's claims somewhat differently than he presents them.  The Court will address all of Horner's claims.

## I.  Summary of Trial Testimony

Testimony at trial established that Horner, a commercial truck driver, crossed from the United States into Canada on March 24, 2014.  His manner at a border station struck a Canadian official as suspicious.  Horner readily admitted that he had a Toshiba laptop in his truck and provided the password. An agent found child pornography when he logged in to view the laptop's contents. (Doc. 106 at 20:18-33:8.)

Canadian officials arrested Horner and released him on bail to return to the United States. Horner failed to appear in Canada for a court date. Another Canadian officer, frustrated that the case could not move forward, decided to

obtain a search warrant and analyze the hard drive of the computer anyway.  The officer explained in detail how he had conducted the analysis. The officer showed the jury that someone had used internet search terms strongly suggestive of child pornography and deleted many sexually explicit photos and videos of children.  A few images or photos remained in the recycle bin or a file called "Business Docs." (Doc. 106 at 33:9–44:13, 50:14–87:19; Doc. 107 at 14:16–83:18.)

A grand jury indicted Horner in the District of Montana after Canadian officials referred the case to the Department of Homeland Security. Horner resided at his home in Colorado on pretrial release. He absconded and was tracked to Uruguay and Trinidad. He arrived in Fort Lauderdale, Florida and immediately was placed under arrest.  Immigration officers seized a Lenovo laptop from Horner, searched it, and found a small number of sexually explicit photos of what appeared to be underaged girls. (Doc. 107 at 88:15-102:24, 120:13-133:3.)

## II.  Jurisdiction

Horner contends that the statute he violated, 18 U.S.C. § 2252(a)(1), cannot be enforced outside the territory of the United States. He asserts that he was apprehended in Coutts, Alberta, Canada, so no evidence exists that he possessed a computer harboring illegal child pornography while he was in the United States. He cites *United States v. Martinelli*, 62 M.J. 52 (C.A.A.F. 2005), for the proposition that the Child Pornography Prevention Act does not apply outside the

4

United States. (Doc. 126 at 4 ¶ 5A; Doc. 126-2 at 1-6.)

"Jurisdiction is proper if the offense, or part of the offense, occurred in the United States." *United States v. Moncini*, 882 F.2d 401, 403 (9th Cir. 1989) (citing *Rocha v. United States*, 288 F.2d 545, 547 (9th Cir. 1961)). Horner avers that "the government has only inferred that the Petitioner might have possessed a computer with proscribed materials in the United States." (Doc. 126-2 at 3.)

*Martinelli* questioned whether a defendant's conduct occurring entirely outside the United States—"specifically in Darmstadt, Germany"—could support conviction. *See Martinelli*, 62 M.J. at 53–54 (Erdmann, J.). Horner drove a commercial truck from the United States into Canada. The law required the United States to prove that Horner possessed a computer with proscribed images in the United States. It did not demand that the evidence be direct rather than circumstantial.

Horner did not suggest at trial, and does not suggest now, that he initially took into his possession either the images or the computer in the brief period of time after he left the United States and before he got out of the cab to go into the Canadian border station to answer questions. Forensic analysis of the computer found in Horner's truck indicated someone had placed images constituting child pornography on the hard drive before March 24, 2014, the day that Horner drove across the border into Canada.

The jury justifiably inferred, beyond reasonable doubt, that Horner possessed the computer and the images in the United States before he entered Canada. And, by moving from some location inside the United States to Canada, Horner transported child pornography. This claim (Doc. 126 at 4 ¶ 5A; Doc. 126-2 at 1-6) is denied.

## III. 18 U.S.C. § 3231

18 U.S.C. § 3231 confers jurisdiction on federal district courts to hear criminal cases. Horner argues the statute was not properly enacted in 1948 and that Congress exceeded its powers in amending it.  He acknowledges that *stare decisis* may be implicated (Doc. 126-2 at 24–25), but urges the Court to recognize his interpretation of the law as correct.

### A.  Legislative Enactment

The Ninth Circuit does not appear to have decided whether Congress validly enacted § 3231, but other federal appellate courts have.  *See, e.g.*, *United States v. Horner*, 769 Fed. Appx. 528, 532–35 (10th Cir. 2019) (unpublished mem. disp.) (following *United States v. Tony*, 637 F.3d 1153, 1158 n.9 (10th Cir. 2011)).  Title 18 was "enacted into positive law" long ago, *see, e.g.*, *Flores v. Attorney General*, 856 F.3d 280, 289 n.38 (3d Cir. 2017) (citing cases), when Congress combined §§ 546 and 547 of the former Title 18 under § 3231. Section 3231 continued without interruption the federal district courts' original jurisdiction of federal offenses.

6

The Constitution does not require that the "yeas and nays" of each Member of Congress be recorded in order to create *any* law but only to override a presidential veto. *See* U.S. Const. art. I, § 7, cl. 2. A bill signed by the presiding member of each house and by the president is a law. "Where such an attested enrolled bill exists, *Marshall Field* requires 'the judicial department to act upon that assurance, and to accept the bill as having passed Congress.'" *Public Citizen v. U.S. Dist. Court*, 486 F.3d 1342, 3150 (D.C. Cir. 2007) (internal brackets omitted) (quoting *Marshall Field & Co. v. Clark*, 143 U.S. 649, 672 (1892)). Enrolled bills signed by the president within ten days after Congress adjourns are validly enacted laws. *See* U.S. Const. art. I, § 7, cl. 2; *Edwards v. United States*, 286 U.S. 482, 494 (1932).

To the extent the Court may misunderstand Horner's argument, it simply observes that attacking Title 18 "because of supposed irregularities in its enactment" is "unbelievably frivolous." *United States v. Collins*, 510 F.3d 697, 698 (7th Cir. 2007) (ordering counsel to show cause why he should not be sanctioned for professional misconduct for "profound disservice to his clients."). Horner fails to persuade this Court that no United States District Court has had subject-matter jurisdiction to adjudicate any criminal case since at least 1948.

## B.  Congressional Power

The Commerce Clause supports criminal jurisdiction.  *See, e.g.*, *United States v. Lopez*, 514 U.S. 549, 552–53 (1995) (quoting *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 196 (1824)).  The Ninth Circuit repeatedly has determined that Congress acted within the scope of its powers under the Commerce Clause by prohibiting interstate and intrastate production and possession of child pornography.  *See, e.g.*, *United States v. Sullivan*, 797 F.3d 623, 631–32 (9th Cir. 2015); *United States v. Gallenardo*, 579 F.3d 1076, 1081 (9th Cir. 2009); *United States v. McCalla*, 545 F.3d 750, 755–56 (9th Cir. 2008).  Horner offers no argument why Congress could prohibit these activities, but could not prohibit transportation of child pornography.

### C.  Conclusion

Horner's claims that 18 U.S.C. § 3231 is invalid, (Doc. 126 at 4-5 ¶¶ 5B, 5C; Doc. 126-2 at 7-18) are denied.

## IV.  FOIA Requests

Horner claims responses or non-responses to his requests for documents under the Freedom of Information Act prove "numerous questionable acts by law enforcement officials . . . taint the Petitioner's conviction."  (Doc. 126-2 at 26; Doc. 126 at 6 ¶ 5D; Doc. 126-4 at 1-123.) Further proceedings, such as an answer or an evidentiary hearing, are necessary if Horner "allege[s] specific facts which, if

true, would entitle him to relief." *United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003) (quoting *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996)).

## A.  Ownership of Computer and External Storage Devices

Horner avers that the government did not introduce "warranty registration cards," "sales receipts or any other proof of ownership documentation" to show that he owned the computer found in his truck or external storage devices that forensic analysis showed had been connected with the computer at some time in the past. (Doc. 126-2 at 27.)

The United States had to prove that Horner knowingly transported images constituting child pornography. (Doc. 107 at 148:15–149:7.) The United States did not have to prove that Horner owned the electronic devices. The government simply had to establish Horner exerted control over the Toshiba laptop containing those images.

Officer Slavens testified that he asked Horner whether he had any electronic devices and whether they were password protected. Horner responded, "Why, are you going to look at my computer?" Horner provided the password, (Doc. 106 at 29:16–30:14) that provided access to the administrator-class user account, named "Rondo." (*Id*. at 67:11–68:3.)  The government needed no additional evidence to justify the jury's inference that Horner controlled the computer. Other evidence

9

may have been pertinent to Horner's responsibility for the images and the transport, but as to "ownership" of the computer, Horner's claim, (Doc. 126-2 at 26–27) is denied.

## B. Chain of Custody

Assuming, as Horner asserts, that the Department of Homeland Security "botched" its documentation of the chain of custody (Doc. 126-2 at 27–28), the United States proved the contents of the computer through Agent Lafontaine, who recognized the laptop as the one he examined and who testified about his analysis of its contents. (Doc. 106 at 63:6–66:16.) What happened in the chain of custody after that point proves irrelevant. Horner does not explain how any failure to comply with the treaty regarding transfer of evidence between the United States and Canada "taints" evidence used against him. This claim is denied.

## C. Arrest and Release

Horner questions whether Officer Slavens had probable cause[1] to arrest him. Horner asserts that the conditions of his pretrial release by Canada were irrelevant and prejudicial. (Doc. 126-2 at 28–29.) Finally, he claims that Canada's decision to release him on bail showed that it had no interest in prosecuting him. (*Id.*)

---

[1] The United States Constitution requires that the States and the federal government have probable cause to support an arrest. It does not require Canada to show probable cause to arrest a United States citizen in Canada. It does not matter what standard applied under the law of Canada. The point of this evidence was to show the handling of the laptop and Horner's consciousness of guilt, rather than the legality of Canada's actions.

Officer Slavens testified that he accessed the computer in Horner's truck with the password that Horner provided, went to the "Start" menu and looked up "Pictures," saw images of "what appeared to be preteen girls in bathing suits," and then saw "three images of what appeared to be early teen females, and they were sexually explicit photographs." (Doc. 106 at 32:7–33:1.) Officer Slavens arrested Horner for possession of child pornography. (*Id.* at 33:2–20.) Officer Slavens transferred both Horner and the laptop to Officer Shaw. (*Id.* at 34:2–35:7.)

Officer Shaw testified that he picked up Horner and received the laptop from Officer Slavens and transported both to Milk River. He put the laptop in the evidence room. Under the Canadian system, Horner had a bail hearing within hours of his arrest. After he posted bail, Officer Shaw took Horner back to the border and released him. Horner failed to appear for a court date in Canada and, as Officer Shaw also testified, Canada still has a pending warrant for his arrest. (Doc. 106 at 39:6–41:24.)

Horner's failure to appear in Canada as required, like his later flight from the United States, was relevant because it supported an inference that he was conscious of his guilt and intended to evade accountability. His claim is denied.

## D.  Agent Lafontaine

Horner claims that the government failed to prove "how security was maintained ensuring that proper chain of custody was maintained." (Doc. 126-2 at

11

29.) The agents testified about where the computer went and when, and Agent Lafontaine testified to his analysis of the hard drive. No need exists to introduce into evidence the documents created by these witnesses. The failure to introduce these documents at trial does not support an inference that the documents did not exist or contradicted any witness's testimony.

Horner also complains that Officer Lafontaine "called his objectivity into question" by assigning the case to himself, admitted he was "angry," and used the word "cracked" to describe his use of the password Horner had given to Officer Slavens. (Doc. 126-2 at 29–30) (referring to Doc. 106 at 67:11–68:3; Doc. 107 at 65:4–67:25.) The jury heard this testimony—which consisted of Officer Lafontaine's explanation for the nine-month delay, (*see* Doc. 126-2 at 31)—and could decide for itself what it meant.  The jury could also consider whether Officer Lafontaine provided insufficient details about his analysis or whether any other officers were present to "ensure the integrity of the evidence was not compromised."  (*Id*. at 29.)  Horner's criticism of Officer Lafontaine's testimony does not add anything new to the evidence presented to the jury.

Both Officer Lafontaine's testimony that the images came from the internet and the fact that the United States did not prove who put the images on the hard drive, (*see* Doc. 126-2 at 30), prove largely irrelevant. The government based its case on the following factors: the nature of the images; someone's use of internet

12

search terms showing that child pornography did not appear on the hard drive by mistake; Horner's possession and knowledge of the images' presence on the laptop hard drive; and the laptop's presence in Horner's truck as it moved from the United States into Canada. Officer Lafontaine testified that the images were on Horner's laptop long before Horner transported the laptop and its images into Canada, regardless of who put the images on the hard drive. Officer Lafontaine's testimony that the images came from the internet was not prejudicial to Horner, as it indicated that Horner had not sexually abused the children to produce the images himself.

Horner's allegations against Officer Lafontaine's forensic analysis (*see* Doc. 126-2 at 30–32), add nothing of substance to the case. These allegations merely seek to raise questions regarding Officer Lafontaine's credibility. The jury heard the testimony and reached its own decision whether to believe what Officer Lafontaine said. (Doc. 107 at 167:21–169:24.)

### E.  The Lenovo Laptop

Horner claims the second laptop "did not contain child pornography." (Doc. 126-2 at 33.)  The jury heard the agent testify, saw the images, and decided whether they had any bearing on Horner's intent, knowledge, or absence of mistake at the time of his entry into Canada. (Doc. 107 at 151:25–152:6.)

### F.  Conclusion

Horner's rereading of the trial transcript considering his FOIA requests adds

13

nothing material to the evidentiary picture presented to the jury at trial. His allegations do not support an inference that important information might have been overlooked or identify specific facts that, if true, would support relief. These claims (Doc. 126-2 at 26–33), are denied.

## V. Procedural Errors

Horner alleges various errors at trial. (Doc. 126-2 at 33–34.) These claims are defaulted because they could have been raised on direct appeal. *See, e.g.*, *United States v. Frady*, 456 U.S. 152, 165 (1982) (quoting *United States v. Addonizio*, 442 U.S. 178, 184 (1979)). It proves more efficient to address them on the merits.

### A. Hearsay Objection

Horner claims the Court was "not an impartial, objective arbiter" because it suggested to the government how to avoid a hearsay objection. (Doc. 126-2 at 33.) The matter was trivial, involving a rephrasing of a question, and the Court's comment saved time.

### B. Jury Instructions and Closing Arguments

Horner asserts the Court told the jury "the alleged offense occurred in Toole county (Montana)" and that this statement "is clearly not supported by the evidence." (emphasis in original)(Doc. 126-2 at 33.) The Court mentioned Toole County when reading the charge to the jury. (Doc. 107 at 148:4–14; Doc. 106 at

7:5–17.) Horner was in Sweet Grass, Montana, in Toole County before he crossed into Coutts, Alberta, Canada.  *See* Fed. R. Evid. 201(b)(1).

Horner objects to the government's statement that the evidence showed a computer was transported from Montana into Canada when "[n]o evidence presented that the computer in question was ever in the United States." (Doc. 126-2 at 33–34.) Horner did not and does not claim that he acquired the Toshiba laptop after he left the United States and before he got out of the cab to go into the Canadian border station.

Finally, Horner incorrectly claims that the Court erroneously included one jury instruction. (Doc. 126-2 at 34.) The proposed instruction on the defendant's testimony was removed when Horner did not testify. (Doc. 107 at 141:8–143:8.) At the end of the instructions regarding the verdict, the Court began to read an instruction on forfeiture, but stopped because forfeiture was not relevant at that point. The jury knew the forfeiture instructions would apply only if they found Horner guilty. (Doc. 107 at 156:12–157:3.) No realistic prospect of confusion or prejudice existed.

## C.  Conclusion

Horner's claims of trial error (Doc. 126-2 at 33–34) are denied.

## VI.  Ineffective Assistance of Counsel

Horner alleges that counsel was deficient because he did not challenge

"jurisdiction, the legitimacy of the evidence, or the expertise of prosecution witnesses." (Doc. 126-2 at 34.) These challenges lack merit. Horner cannot show that he was prejudiced by counsel's failure to make them. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). This claim (Doc. 126 at 6 ¶ 5E) is denied.

### Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard proves satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

None of Horner's claims meets even the relatively low threshold required for a COA. Canadian officials' discovery of child pornography on Horner's laptop at the border station ineluctably proved Horner possessed that child pornography in the United States before he drove into Canada. Horner's arguments that 18 U.S.C. § 3231 is invalid are "unbelievably frivolous." The officers who arrested Horner, took custody of his Toshiba laptop, analyzed it, rearrested Horner, took custody of

16

another laptop and analyzed it all testified for the jury.  Horner identifies no fact established by the responses to his FOIA requests that would, if true, support relief. His claims of trial error are unfounded. Horner's claim of ineffective assistance of counsel also lacks merit. There is no reason to encourage further proceedings.  A COA is not warranted.

Accordingly, **IT IS ORDERED**:

1.  Horner's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 126) is **DENIED**.

2.  A certificate of appealability is **DENIED**.  The clerk shall immediately process the appeal if Horner files a Notice of Appeal.

3.  The clerk shall ensure that all pending motions in this case and in CV 20-04-GF-BMM are terminated and shall close the civil file by entering judgment in favor of the United States and against Horner.

DATED this 17th day of June, 2020.

Brian Morris, Chief District Judge
United States District Court